UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| RHONDA JEAN CORNETTE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 7:24-CV-30-REW |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) OPINION & ORDER |
| | ) |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Rhonda Jean Cornette appeals the denial of her application for Supplemental Security Income Benefits (SSI). *See* DE 1 (Complaint). On August 5, 2024, Cornette moved for judgment in her favor following the Commissioner's Answer. *See* DE 11 (Plaintiff's Brief). The Commissioner responded in opposition, requesting affirmance of the underlying Administrative Law Judge (ALJ) decision. *See* DE 13 (Commissioner's Brief). Cornette filed a timely reply. *See* DE 14 (Reply). The administrative record appears at DE 8 ("R." Administrative Transcript). After reviewing the record, with particular emphasis on the limited portions Cornette challenges, the Court finds the ALJ's determination supported by substantial evidence and compliant with Agency rules and regulations. Accordingly, the Court **DENIES** Cornette's appeal and **AFFIRMS** the SSI denial.

**I.   Background**

In December 2020, Cornette applied to the Social Security Administration for SSI. *See* R. at 227–30 (Application Summary). Cornette alleged that, as of January 1, 2014, the following conditions rendered her disabled: "PTSD, back problem, hand problem, leg problem, knee problem, hip problem, and memory loss[.]" *See id.* at 93 (Disability Determination Explanation).

1

Following agency denials, Cornette appealed, resulting in a hearing before ALJ Breinne Mullins. *See id.* at 42–71 (Hearing Transcript). On May 30, 2023, Judge Mullins issued an unfavorable decision, concluding that Cornette was not "disabled" within the meaning of the Social Security Act. *See id.* at 11–22 (ALJ Opinion).

Judge Mullins's opinion tracked the standard five-step evaluation sequence laid out in 20 C.F.R. § 416.920. First, Judge Mullins found that Cornette "has not engaged in substantial gainful activity since December 21, 2020, the application date." *Id.* at 13. Second, she determined that Cornette "has the following severe impairments: arthralgias, degenerative disc disease, asthma, Hepatitis C, major depressive disorder, anxiety, panic disorder, and post-traumatic stress disorder (PTSD)." *Id.* Third, Judge Mullins concluded that Cornette "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 14. Fourth, Judge Mullins assessed Cornette's Residual Functional Capacity (RFC). *See id.* at 16–21. Judge Mullins determined that Cornette was able to "perform light work as defined in 20 CFR 416.967(b)," subject to the following exceptions:

> [N]o climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, stooping, kneeling, crouching, crawling, and balancing as defined by SCO of DOT; sit/stand every two-hours for five minutes while at the work station; avoid concentrated exposure to temperature extremes, vibrations, unprotected heights, and atmospheric conditions as defined by the SCO of the DOT. She can understand, remember, and carry out simple instructions, but cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas; can occasionally interact with others, such as coworkers, supervisors, but no interaction with . . . the public; and can deal with only occasional changes in a routine work setting.

*Id.* at 16.

2

Central to Cornette's challenge here, Judge Mullins considered four general categories of evidence in reaching her ultimate step-four physical RFC determination. First, she took into account Cornette's own testimony. *See id.* at 17.

Second, she considered Cornette's diagnostic medical records. *See id.* at 17–18. Most notably, this included a 2016 MRI of the lumbar spine showing "multilevel disc disease" and a 2018 x-ray of the same area that "revealed degenerative changes without acute process." *Id.* at 17. Judge Mullins also analyzed records of Cornette's 2018 chiropractic treatment, as well as previous tests for Hepatitis C. *See id.*

Third, Judge Mullins considered the administrative medical findings from Cornette's prior 2015 Title XVI application. *See id.* at 19. Specifically, Judge Mullins looked at the earlier ALJ's January 2018 decision in that proceeding, which imposed the following RFC determination:

> [Cornette] has the residual functional capacity to perform light work . . . except she can frequently climb ramps or stair; occasionally climb ladders, ropes, or scaffolds, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to temperature extremes, pulmonary irritants, vibration, hazards of moving machinery and unprotected heights; is limited to simple, routine, repetitive tasks and occasional interaction with others.

*Id.* at 80 (2018 ALJ Decision). Judge Mullins largely "adopted the prior Administrative Law Judge's assessment, as [that] decision included a severe physical impairment of degenerative disc disease of the lumbar spine via an x-ray and MRI, and this impairment is chronic in nature with current records showing a repeat positive x-ray of the lumbar spine." *Id.* at 19. Judge Mullins also imposed "additional limitations" relative to the 2018 RFC finding "based on new and material medical evidence of record." *Id.*

Finally, Judge Mullins considered the opinions of two agency medical consultants, Dr. Christine Booth and Dr. Donna Farmer. *See id.* Dr. Booth submitted a medical evaluation on September 1, 2021, in which she provided the following opinion: "Due to a lack of current

3

evidence [a consultative exam] was scheduled on 7/14/21. [Cornette] missed this exam and has not responded to our multiple attempts to reschedule. Therefore, the evidence is insufficient to assess [Cornette]'s ability to perform basic work activities due to [Cornette]'s failure to cooperate." *Id.* at 94–95 (Dr. Booth Opinion). Likewise, Dr. Farmer's opinion, submitted on January 25, 2022, states in full: "[Cornette] was scheduled for [a consultative exam] on 12/20/21. [Cornette] did not keep exam and has not responded to call in procedures. There is insufficient evidence in file to evaluate." *Id.* at 103 (Dr. Farmer Opinion). Judge Mullins ultimately "did not find these opinions to be persuasive as the current medical records include[] clinical imaging positive for severe degenerative disc disease of the lumbar spine, which is chronic in nature." *Id.* at 19. This procedural election was, undoubtedly, one in Cornette's favor. Rather than closing the door based on Cornette's non-cooperation in a current CE, twice no less, the ALJ carefully scrutinized the record to discern Cornette's impairments and limitations.

At step five, Judge Mullins—after considering vocational expert testimony in conjunction with Cornette's age, education, work experience, and RFC—concluded that Cornette "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 22. On this analysis, Judge Mullins concluded that "[a] finding of 'not disabled' is therefore appropriate under the framework of the above-cited rules." *Id.*

Following Judge Mullins's unfavorable opinion, Cornette unsuccessfully sought review of the decision from the Appeals Council. *See id.* at 1–7 (Notice of Denial). The Council's February 14, 2024 denial rendered the ALJ's decision final for purposes of judicial review. Cornette now

4

turns to federal court, seeking judicial review of the agency's decision under 42 U.S.C §§ 405(g) and 1383(c)(3). *See* DE 1 ¶ 1; DE 11 at 3.[1]

## II. Standard of Review

The Court has carefully reviewed Judge Mullins's decision, the transcript of the administrative hearing, and the pertinent administrative record.[2] Judicial review of an ALJ's disability determination is a limited and deferential inquiry, turning on the narrow question of whether substantial evidence supports the decision and whether the ALJ properly applied relevant legal standards in reaching it. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 496 (6th Cir. 2019) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Substantial evidence signals deference, not infallibility. It "is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."

---

[1] Because Cornette's initial application sought SSI, the Court's jurisdiction is proper under 42 U.S.C. § 1383(c)(3), which incorporates by reference § 405(g). *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner . . . after a hearing under [§ 1383(c)(1)] shall be subject to judicial review as provided in section 405(g) of this title.").

[2] That is, those records relevant to the issues Cornette presents for review. The Court, not obligated to independently mine the lengthy record, focuses on particular matters cited by the parties.

*Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Smith v. Hatler*, 307 F.3d 377, 379 (6th Cir. 2001)). Accordingly, the Court will not reverse an ALJ's findings merely because the record contains evidence supporting a different conclusion—even if said evidence is substantial. *See Warner*, 375 F.3d at 390 (quoting *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). Rather, the Court must affirm the agency decision if substantial evidence supports it, even if the Court might have decided the case differently if standing in the ALJ's shoes. *See id.*; *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011).

The ALJ must also faithfully heed agency rules and regulations. An ALJ's failure to properly apply and follow applicable law "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations.").

### III. Analysis

Cornette's sole contention is that Judge Mullins failed to adequately develop the record at step four in support of her physical RFC finding.[3] She contends the absence of a required bridge between the medical record and the ALJ's RFC formulation.[4] In furtherance of this argument,

---

[3] Cornette's argument focuses solely on Judge Mullins's *physical* RFC finding and presents no challenge to the validity of her *mental* RFC determination. Thus, the Court's analysis here involves only the physical RFC.

[4] *See* DE 14 at 1–2 (Reply, calling "crux" of argument "whether the ALJ logically connected the evidence to the RFC determination in the absence of the guidance of any medical professional").

Cornette relies largely on the so-called "*Deskin* rule," as articulated in *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008). *Deskin* holds that where a "transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.* at 912 (quotation marks and citation omitted). The only exception to this rule is when the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity." *Id.*

Here, because both agency consultants found insufficient evidence to render a physical determination, the record lacked a medical-source opinion in support of Judge Mullins's imposed RFC. Absent such an opinion (or one of *Deskin*'s three approved substitutes), Cornette contends that Judge Mullins "made a lay interpretation" of raw, diagnostic evidence (most notably the "2018 x-ray of the lumbar spine where moderate to significant right facet arthropathy was present at L4-5," DE 11 at 7) and used it to "craft[] the RFC out of thin air . . . without any guidance from a medical professional concerning the severity of the [diagnostic] findings." DE 11 at 6–7.

As a threshold matter, the Court notes that *Deskin* is far from settled law and hardly a "rule" in this Circuit. While a smattering of district courts have adopted similar rules, *see, e.g.*, *McCauley v. Comm'r of Soc. Sec.*, No. 3:20-cv-13069, 2021 WL 5871527, at *14 (E.D. Mich. Nov. 17, 2021) ("Where a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion[,] . . . the ALJ should develop the record by obtaining opinion evidence that accounts for the entire relevant period."), *Deskin* is not binding authority, and recent Sixth Circuit rulings have cut strongly against application of such a rule. *See, e.g.*, *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("[T]he administrative law judge's residual functional capacity

finding does not need to correspond to a particular physician's opinion. . . . No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding[.]"); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("Mokbel-Aljahmi contends that once the ALJ decided to give no weight to the physicians' opinions regarding his ability to work, the ALJ was required to get the opinion of another physician before setting the residual functional capacity. We disagree. We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 339 (6th Cir. 2018) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." (quoting *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 640 (6th Cir. 2016))).

Recent decisions in this District have followed the Sixth Circuit's clear guidance and declined to apply *Deskin*. *See, e.g.*, *Ballou v. O'Malley*, No. 6:24-cv-32-GFVT, 2024 WL 4805342, at *5 (E.D. Ky. Nov. 15, 2024) (explicitly rejecting application of *Deskin*); *Regan v. O'Malley*, No. 5:23-cv-65-GFVT, 2024 WL 1336443, at *5–6 (E.D. Ky. Mar. 28, 2024) (same). Indeed, even in the Northern District of Ohio—Deskin's district of origin—courts frequently refuse to adhere. *See, e.g.*, *Winans v. Comm'r of Soc. Sec.*, No. 5:22-cv-1793, 2023 WL 7622632, at *4 (N.D. Ohio Nov. 15, 2023) ("Deskin is a non-binding district court decision that conflicts with the regulations and Sixth Circuit case law . . . ."); *Skibski v. Comm'r of Soc. Sec.*, No. 3:23-cv-1554, 2024 WL 3387290, at *13–14 (N.D. Ohio July 9, 2024) (collecting Northern District of Ohio cases rejecting *Deskin* and emphasizing that "[Claimant]'s argument that the ALJ was obligated to request additional medical opinion evidence merely because 'the record lacks a medical opinion of [her RFC] from any medical source addressing the period at issue' is not

8

supported by the regulations or Sixth Circuit precedent" (emphasis omitted) (internal citation omitted)).

The Court here joins the long list of decisions rejecting the strictures of *Deskin*. Relevant governing regulations simply provide that an ALJ must base an RFC determination on "all of the relevant medical and other evidence," 20 C.F.R. § 416.945(a)(3), and that the ALJ "*may*" order a consultative exam if the medical record is insufficient, *see id.* § 416.912(b)(2) (emphasis added). This is consistent with the above Sixth Circuit caselaw, which requires only that the ALJ "make a connection between the evidence relied on and the conclusion reached." *See Tucker*, 775 F. App'x at 226. And of course, RFC formulation is the responsibility of the ALJ. *See* 20 C.F.R. § 416.946(c).

Here, Judge Mullins found the final, unobjected to 2018 RFC determination persuasive because that finding was based on a "severe physical impairment of degenerative disc disease of the lumbar spine via an x-ray and MRI, and this impairment is chronic in nature with current records showing a repeat positive x-ray of the lumbar spine." R. at 19 (internal citations omitted). In other words, Judge Mullins concluded that because more current x-ray and diagnostic results matched those used to support the 2018 RFC determination, adoption of that finding as a base was appropriate. This logical reasoning appears sound to the Court and builds an adequate connection between the relied-upon evidence and the ultimate RFC imposed.

The strength of the prior decision and subsequent evidence is why, at least in part, Judge Mullins found the two agency medical opinions unpersuasive. *See id.* ("The undersigned did not find these opinions to be persuasive as the current medical records include[] clinical imaging

9

positive for severe degenerative disc disease of the lumbar spine, which is chronic in nature.").[5] Cornette argues that by disregarding the expert opinions and not seeking more, Judge Mullins "erroneously substituted her own interpretation of the x-ray and MRI for that of the state agency consultants who both opined that further development was necessary. Such further development may have revealed further limitations that would render Plaintiff unable to perform any substantial gainful activity." DE 11 at 8. However, Judge Mullins's decision to disregard the unpersuasive medical opinions was fully compliant with Sixth Circuit precedent. *See Tucker*, 775 F. App'x at 226 ("[T]o the extent that Tucker interprets [the agency expert's medical] opinion as asserting that Tucker is more limited than the administrative law judge's mental residual functional capacity finding recognized, that interpretation is contradicted by the medical evidence as a whole in the record. The administrative law judge articulated her rationale for discounting [the agency expert]'s opinion and that rationale is supported by substantial evidence."). Here, Judge Mullins likewise found that the experts' opinions were contradicted by the medical evidence as a whole, and she adequately articulated her rationale for making such a finding. Though § 416.918 would likely have allowed Judge Mullins to make an adverse determination for Cornette's CE participation defaults, Judge Mullins instead placed the prior 2018 determination against the interim evidence and rejected the evaluators' failure to account for the full record. This benefitted Cornette, just not enough to get her across the disability line.

Why? Because Judge Mullins, as was required, looked at the complete record, including interim medical findings, an interim car wreck, and the testimony at the hearing. The medical records (*e.g.*, confirmatory post-2018 back examinations and treatment) supported the chronic

---

[5] The Court notes that Cornette does not actually dispute the validity of Judge Mullins's finding that the agency opinions were unpersuasive. Instead, Cornette contests only Judge Mullins's decision to not seek further medical-source opinion evidence once this initial finding was made.

10

nature of the prior impairments. Cornette's own testimony described some limitations, but conceded an ability to stand for an hour, sit for two hours, complete all housework ("I can't stay at it all the time, but no. I don't have no problem doing general work at home."), and lift 25 pounds. *See* R. at 59, 64 (Cornette Hearing Testimony). Thus, Judge Mullins built on the prior decision, accounted for intervening matters and Cornette's testimony (in context, including a 2021 unassisted and "normal gait" observation, *see* R. at 17), and yielded a rational and well-supported RFC. Reference to a claimant's testimony is part and parcel of the RFC process, where apt. *See* 20 C.F.R. § 416.945(3).[6]

Indeed, the Court views Cornette's argument in this regard—that Judge Mullins "played doctor" by substituting the experts' medical opinions for her own lay interpretation of raw medical data—as particularly disingenuous given that the reason Dr. Booth and Dr. Farmer found insufficient evidence to assess Cornette's RFC was because Cornette herself failed to attend the scheduled appointments. *See* R. at 94 ("[Cornette] missed this exam and has not responded to our multiple attempts to reschedule. Therefore, the evidence is insufficient to assess [Cornette]'s ability to perform basic work activities *due to [Cornette]'s failure to cooperate*." (emphasis added)); *id.* at 103 ("[Cornette] did not keep exam and has not responded to call in procedures. There is [therefore] insufficient evidence in file to evaluate."). Thus, the only reason the transcript lacked a proper *Deskin* medical opinion was due to Cornette's own unexplained failure to attend her scheduled medical exams. Judge Mullins fairly assessed what the record did contain, including the remaining evidence in the record (such as the 2018 RFC finding, which itself *was* supported by a proper medical opinion, *see* R. at 82–83). If Cornette felt that the relied upon medical evidence did not properly encapsulate the severity of her impairments, or that "further

---

[6] And, *e.g.*, Cornette's family depicted her as able to shop for "hours," perhaps 5–6 hours, *see* R. at 275, further intermixed into the ALJ's assessment.

11

development" was necessary to properly illustrate the scope of her ailments,[7] it is inexplicable why she would not attend—after being given multiple opportunities to do so—an exam that would seemingly provide a direct remedy to the issue. Her lawyer, of course, represented that the record was complete at the time of the hearing. R. 48. The Commissioner quite rightly notes that Cornette had the burden of proving disability. *See* 20 C.F.R. § 416.912(a).

The Court will not allow Cornette—who, again, makes no attempt to explain or excuse her appointment no-shows—to engage in this dance, contending the record was adequate only until she lost the decision. Judge Mullins reasonably discarded the agency experts' opinions and instead relied on the remaining evidence in the record to construct the RFC. This was a proper method under Sixth Circuit precedent, and the mere fact that her decision lacked a direct and contemporaneous medical opinion does not, on this record, invalidate the RFC determination.

In conjunction with her argument for a strict application of *Deskin*, Cornette also more generally disputes Judge Mullins's decision to implement "additional limitations" to those put forth in the 2018 RFC, purportedly based on "new and material medical evidence of record." *See* R. at 19. Cornette contends that Judge Mullins failed to explain what this "new and material" evidence was, arguing that she "[did] nothing more than summarize evidence and then conclude without explanation that this was the ultimate RFC." DE 11 at 8 (emphasis omitted).

Judge Mullins's physical RFC finding contains three additional and/or upgraded limitations compared to the 2018 version: (1) *occasional* (as opposed to frequent) climbing of

---

[7] What specific "additional impairments" would have been revealed by this further development, Cornette does not and cannot say. Judge Mullins found the supported impairments and rationally defined how those limitations impacted Cornette's work abilities. It was rational to treat the 2018 analysis as supported. It was rational to account for interim events and treatment. It was rational to discount Cornette's own precise formulation, in part based on the overall mildness of the physical limits in the record, the consistently conservative treatment, the indications of improvements in 2018, and, *e.g.*, references to Cornette describing a five-year gap, R. at 19, with no treatment of any type through much of the relevant period.

stairs and ramps; (2) *preclusion of* (as opposed to occasional) climbing of ladders, ropes, or scaffolds; and (3) the requirement that Cornette be allowed to "sit/stand every two hours for five minutes while at the work station." *Compare* R. at 16 (2023 RFC finding), *with* R. at 80 (2018 RFC finding). Cornette focuses her argument here on the sit/stand requirement, claiming that the limitation is "vague" and that Judge Mullins "fail[ed] to connect this limitation to any evidence in the record." DE 11 at 8. On the contrary, however, and as noted, Judge Mullins crafted this portion of the RFC based on partial acceptance of Cornette's own testimony, in which she "estimated she could stand no longer than one hour [and] sit two hours before having to move[.]" R. at 17; *see id.* at 59 (Cornette Testimony). The ALJ looked askance at Cornette's precise views in terms of "intensity, persistence, and limiting effects," *id.* at 16, but the interim events/records and Cornette's sworn views provided reasons for some restrictions beyond what the 2018 ALJ imposed. The RFC's sit/stand limitation is therefore not "vague" or arbitrary as Cornette claims but is instead appropriately tailored to address Cornette's own characterization of her movement abilities, to the extent credible. The limitation furthermore complies with SSR 96-9p, which requires the ALJ to specify "the frequency of the [claimant]'s need to alternate sitting and standing." *See* SSR 96-9p, 61 Fed. Reg. 34478, 34482 (July 2, 1996). And as to the verbiage, the hearing shows that the ALJ plainly was talking about Cornette's need, in a hypothetical job, for the "opportunity to alternate between sitting and standing every two hours for five minutes while at the workstation[.]" *See* R. at 67. The Court sees nothing vague in the RFC specification.

Cornette also argues that the sit/stand limitation "would be more akin to sedentary work which is not satisfied by the light jobs relied upon to deny [Cornette] benefits at step five of the sequential evaluation process." DE 14 at 3; *see also* DE 11 at 9. However, Cornette does little to

13

expand upon this argument, which is not accurate in the Court's view, and Judge Mullins expressly considered the number of unskilled, light-work jobs available given the RFC's limitations:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be [proper] . . . . However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, [Judge Mullins] asked [a] vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of light representative occupations. Examples provided at the unskilled light level of exertion in the national economy were as follows: routing clerk jobs, 53,000 jobs; marker jobs, 280,000 jobs; and mail sorter jobs, 10,000 jobs.
>
> . . .
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Although some limitations within the residual functional capacity were not found in the Dictionary of Occupational Titles or its companion publications (i.e. sit/stand option), the vocational expert testified that the representative occupations identified could be performed with the limitation(s). In addition, the vocational expert testified that the opinion was supplemented by the vocational expert's research, work experience, and education. The undersigned therefore finds that this is a reasonable basis for the vocational expert's opinion.

R. at 21–22 (citations omitted).  The Court therefore comprehends no reason (and Cornette does not provide one) to conclude that the imposed sit/stand limitation inherently conflicts with the light-work RFC finding or ultimate disability determination.

The Court finds the RFC formulation supported by substantial evidence and formulated in compliance with the governing regulations.  As such, the Court rejects Cornette's appeal.

## IV.   Conclusion

In sum, Judge Mullins did not "craft[] the RFC out of thin air" as Cornette contends. Rather, in reaching her RFC determination, Judge Mullins considered not only the agency consultants' findings (which she appropriately discarded as unpersuasive), but also Cornette's later medical records, her own statements, and her previous agency determination.  Judge Mullins then

14

traversed a logical bridge between this evidence and the physical RFC finding. This constitutes substantial evidence in support of her decision, and the imposed RFC therefore stands.

Accordingly, the Court **DENIES** Cornette's appeal (DE 11) and **AFFIRMS** the Agency decision under sentence four of 42 U.S.C. § 405(g). The Court will enter a separate judgment.

This the 28th day of January, 2025.

Signed By:
Robert E. Wier  /s/ REW
United States District Judge

15